Argued June 18, affirmed July 19, 1976

# BUCHANAN, *Petitioner,*
*v.*
# PUBLIC WELFARE DIVISION, *Respondents.*
## (No. 2-11/01-ILB838-9, CA 5888)

552 P2d 80

*James K. Kocher,* Lane County Legal Aid Service, Inc., Eugene, argued the cause and filed the brief for petitioner.

*Janet A. Metcalf,* Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

FORT, J.

**FORT, J.**

Petitioner appeals from an order of the Public Welfare Division of the Department of Human Resources. After hearing, the referee determined that she had received a client-caused overpayment from the Division, an amount to which she was not entitled. The amount of an overpayment must be returned to the Division, but may be taken only from certain sources.

Petitioner has two minor children and has been receiving Aid to Dependent Children since September 1974. On July 23, 1975, petitioner appeared in court and was granted a dissolution decree which awarded her child support payments of $100 per month to start on July 25, 1975, although the dissolution itself was not effective for 60 days.

Petitioner was not represented by counsel at the hearing. In response to her question about receiving title to a 1969 Volkswagen which her husband was willing to give her in exchange for $600 for his equity in the car, the judge said that he could not incorporate such a transaction into the decree because it was not provided for in the dissolution papers. He suggested that petitioner should make some arrangement with the clerk's office after the hearing. At the clerk's office, petitioner signed a satisfaction of child support for $600, intending it to be in lieu of the first six months' support payments, and received the title to the car.

On August 1, 1975, petitioner filled out periodic Welfare Division forms in which she stated that her divorce was "in progress." She did not mention the child support provision or the decree but did state that she had a 1969 Volkswagen. In October the Division learned of her satisfaction of the first six months of support. Among other things, it proposed to reduce her grant as a sanction for not cooperating in collecting child support. After a hearing, the referee determined that petitioner was not subject to sanctions, but that

[ 69 ]

she had received a client-caused overpayment of $600. Petitioner appeals the decision on the overpayment. There is no cross appeal concerning the ruling denying the sanctions.

■ Petitioner contends that the Division has misinterpreted its regulations in holding that there was an overpayment. The primary regulation involved provides as follows:

"An overpayment due to client error is one which results from the failure of the A/R [applicant/recipient] to report in a timely manner the receipt of property, income, money, or any change in circumstances which directly affects his eligibility for, or amount of, public assistance payments. The A/R is required to notify the Branch Office of the receipt or possession of such property, income, money, or other change in circumstances, within the month in which the receipt or change occurred and before disposing of any part of the resource involved." ADC-GA Staff Manual, Reg. II-XII-A 6(c).

In applying this regulation to petitioner's situation, we note that in the dissolution decree petitioner had received a legal right to the payment of $100 per month for child support which constituted a change in circumstances affecting her eligibility for public assistance or the amount of her payment. Petitioner did not notify the Division of the child support within a month, nor did she notify it before disposing of the right to receive six months' support. However, for there to be an overpayment under this regulation, the right to six months' future child support must be a resource.

Petitioner cites Staff Manual, Section II-III-A 2(a) which defines "resource" as "any asset including income which can be used by an individual to meet all or part of his need." Staff Manual, Section II-III-A 1 provides: "Resources must be available for use before they can be considered."

■ Ordinarily child support payments would not qualify as a resource until they had been collected and

were available for the recipient to use. In this case, however, petitioner used the right to those payments to provide a car for herself and her family. Under these circumstances, we hold that petitioner did acquire a resource which she disposed of without notifying the Division. The result has been a client-caused overpayment of $600.

Petitioner contends that this overpayment was caused by administrative error because the Division should have had her sign over any child support rights on July 1, 1975, when a requirement that that be done went into effect. We do not see how signing over her rights in advance would have changed the effect of her signing the satisfaction of child support, so conclude that the overpayment was not the result of administrative error.

Petitioner also cites Staff Manual, Section II-III-D 6(a) which provides that if an overpayment results from receipt of a lump sum, an offset credit may be deducted for the amount needed to accumulate allowable assets. A car is an allowable asset. However, prior regulations in that section provide that allowable assets can be accumulated only from nonrecurring resources, Section II-III-D 2, and that allowable assets cannot be built up from a single lump-sum payment which represents accumulated monthly benefits, Section II-III-D 3. Here, however, the lump sum used to acquire the car was an advance on recurring monthly payments.

Affirmed.

Langtry, J., concurs in the result.